UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

BIN HAO and,
QIDIAN, LLC,

    Defendants.

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF AND DEMAND FOR JURY TRIAL

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

### I.  INTRODUCTION

1. The Commission brings this action as a result of a fraudulent scheme perpetrated by Bin Hao ("Hao") and Qidian LLC ("Qidian") (collectively "Defendants") that primarily targeted the Chinese-American community and raised money from investors in 17 states.

2. From at least January 2017 to as late as 2021, Defendants sold promissory notes and membership interests in various special purpose vehicles ("SPVs") to investors for development of real estate projects with high rates of return (8-25%) to facilitate providing loans to a Miami-based real estate company that became insolvent and filed for bankruptcy in 2020 ("Bankrupt Entity"). Defendants directed investors to send their money directly to Qidian and/or

Qidian SPV bank accounts where the funds were often pooled with other investor proceeds regardless of the real estate project.

3. Starting in January 2019, Bankrupt Entity ceased paying nearly all interest on loans it received from Qidian. Despite Bankrupt Entity's failure to pay interest on its loans, Defendants failed to disclose Bankrupt Entity's deteriorating financial condition to investors. During this time period (after January 2019), Defendants continued to solicit and raised at least $10.3 million of investments from at least 67 investors in both Bankrupt Entity and new real estate offerings. Defendants solicited funds while misrepresenting that Qidian was using investor proceeds to invest in real estate ventures to generate "guaranteed" annual investment returns.

4. Defendants used more than $2.3 million of new investor money to pay prior investors' interest in a Ponzi-like fashion, and Hao misappropriated at least $793,267 to pay his personal expenses.

5. The scheme collapsed after Bankrupt Entity filed for Chapter 11 bankruptcy in September 2020.

6. By engaging in this fraudulent conduct, Defendants have violated, and unless enjoined, are reasonably likely to continue violating, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

7. The Commission requests, among other things, that this Court enter orders: (a) permanently enjoining Defendants from violating these provisions of the federal securities laws; (b) directing Defendants to pay disgorgement with prejudgment interest based upon these

violations; (c) directing Defendants to pay civil money penalties; and (d) issuing an officer and director bar against Hao.

## II. DEFENDANTS

8. **Bin Hao**, age 48, resided in Herndon, Virginia during the relevant time period. Hao is founder, sole principal, and managing member of Qidian, LLC and controls the company.

9. **Qidian, LLC,** is a currently inactive Virginia limited liability company with its principal place of business in Tysons, Virginia. Qidian was formed in Virginia on January 9, 2015. Qidian is now defunct and administratively dissolved.

## III. JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a)]; Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa].

11. This Court has personal jurisdiction over Defendants, and venue is proper in the Southern District of Florida. The Bankrupt Entity that Qidian invested with maintained its principal place of business in Miami, Florida. The majority of the real estate ventures invested in by Qidian are located in Miami, Florida, and many of the acts and transactions constituting violations of the Securities Act and Exchange Act occurred in this district. The Bankrupt Entity's bank accounts that Qidian wired investor money to were also located in this district. At least two investors were located in this district.

12. In connection with the conduct alleged in this Complaint, Defendants, directly or indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means and instruments of transportation or communication in interstate commerce, or the mails.

## IV.    DEFENDANTS' ACTS IN VIOLATION OF THE SECURITIES LAWS

### A.    The Securities Transactions

13.    Qidian held itself out as a "High-Tech Real Estate Investment & Financing company," and Hao presented himself as a successful hedge fund trader and real estate project financier.

14.    Starting no later than January 2017, the Defendants offered investments in unit interests in SPVs combined with promissory notes to provide financing for Bankrupt Entity's real estate ventures in the Miami metropolitan area developing several apartment buildings and private homes.

15.    Hao, on behalf of Qidian, solicited investors that he had prior relationships within the Chinese-American community of Northern Virginia and Maryland, or investors contacted Hao through word of mouth from other investors.

16.    Qidian and Hao provided investors offering materials, including a subscription agreement for unit interests in an SPV, that Qidian created for each real estate venture the SPV was to invest in, as well as a promissory note bearing a variable interest rate (depending on the project) that ranged as high as 25% per year and was issued by each SPV.

17.    The materials and agreements identified the offerings and membership interests as investments in unregistered securities.

18.    Hao represented that the investments were low risk and carried various guarantees. Hao represented to investors that they "will own 100% of the project prior to successful exit" and that the investments carried various guarantees such as a "project completion guarantee" and further "principal guaranteed" and "return guaranteed."

19. Similarly, Qidian's website stated that its projects had completion guarantees with developers.

20. In late January 2019, after Bankrupt Entity had mostly ceased paying Qidian interest on the loans it had received, Defendants continued soliciting investors to purchase notes in Bankrupt Entity and non-Bankrupt Entity real estate ventures (offering the same or similar structures and terms in promissory notes and units in SPV LLCs) in Miami, Washington, DC, and Maryland.

21. Multiple Qidian investors tied to Bankrupt Entity projects had their original investments rolled into these offerings. Investors signed new investment agreements Hao provided and received new promises regarding interest to be paid. Hao also continued to solicit and accept investments from new investors.

22. As new investor funds were deposited into Qidian's bank accounts, Defendants comingled these funds with other money, did not invest the proceeds in real estate, and proceeded to misappropriate these funds to pay prior investors and their own personal expenses.

23. Numerous investors invested substantial amounts of money in the SPVs. The profits of investors were directly linked to the efforts of Qidian and Hao. Investors had no management power over the SPVs and relied on Defendants to invest their funds with no expectation that they would be required to participate in efforts to generate returns.

24. Investors in the notes were motivated by the expectations of profits generated and distributed by Qidian and Hao. These investments were offered and sold to a broad segment of the public and involved common trading for speculation or investments. Defendants sold their investments to more than 60 investors residing across at least 17 states and offered them to dozens more investors. The SPVs/Hao issued the notes to raise money to be pooled and used for

investments in real estate projects, and the notes were offered and sold to investors, who reasonably expected the notes to be securities.

25.     In total, Qidian provided at least $26 million in funding to Bankrupt Entity for its various Miami projects from investors until Bankrupt Entity filed for Chapter 11 bankruptcy in September 2020.

**B.      Material Misrepresentations to Investors**

26.     Contrary to Hao's portrayal to investors of Bankrupt Entity as a successful and profitable real estate developer, by January 2019 Bankrupt Entity had mostly ceased making interest payments to Qidian and was in dire financial condition.

27.     In furtherance of the fraud, Defendants continued to pitch new investors on Bankrupt Entity real estate investments in order to pay the interest and principal owed to old investors.

28.     Beginning in 2019, Defendants made misrepresentations to investors in oral solicitations, offering materials, and promissory notes regarding the safety of the investments and investment guarantees. For example, a Power Point presentation provided to investors contained misrepresentations that investors "own 100% of the project prior to successful exit" and that the investments carried a "project completion guarantee," as well as "principal guaranteed" and "return guaranteed." Defendants also represented to these investors that the projects were low risk. These statements were false.

29.     Not only were the investments not guaranteed, Qidian did not own any percentage of the real estate projects it invested in as shown by Bankrupt Entity's bankruptcy filings listing Qidian as an unsecured creditor.

30. Defendants offered "guaranteed" interest rates as high as 25% on new investments. However, new investors never received their interest or principal payments.

31. While failing to disclose Bankrupt Entity's deteriorating financial condition from investors, Defendants continued to solicit and raised at least $10.3 million of investments from at least 67 investors in both Bankrupt Entity and new real estate offerings.

32. In fact, Hao emailed Bankrupt Entity's CEO on June 3, 2019, advising that Hao was "crippled for awhile" and "us[ing] my own fund[s]" to pay interest to investors because Bankrupt Entity had ceased making payments.

33. Hao was fully aware of Bankrupt Entity's problems as he told the CEO: "I know you have financial difficulties."

34. In letters sent to investors in 2021, Defendants conceded they knew in 2019 that Bankrupt Entity was not making interest payments to Qidian.

### C. Misappropriation of Investor Funds

35. Defendants represented to investors that their funds would be used to invest in and complete the various real estate projects in Miami, Washington, DC, and Maryland.

36. Contrary to Defendants' representations, Defendants misused and misappropriated more than $3.8 million of the funds Defendants raised from investors.

37. Defendants failed to disclose that they would use investor funds for personal expenses, taking large cash withdrawals, or to pay back previous investors.

38. Defendants used $2.3 million raised from new investors to pay previous investors their principal due on older investments and/or as interest payments in a Ponzi-like fashion.

39. Hao also misappropriated more than $793,267 to pay for his personal expenses including:

- $519,765 in cash withdrawals or transfers to Hao's personal bank account;
- $234,627 in payments on Hao's Chase Bank, American Express, and Citibank credit cards;
- $22,986 in payments to BMW Financial, which appear to be lease payments for Hao's personal car; and
- $15,887 in mortgage payments, which appear to be for Hao's personal residence.

40. Defendants also transferred $733,217 to three separate accounts in China, and none of the individuals listed as account owners are known to be investors.

## V. CLAIMS FOR RELIEF

### COUNT I
### Violations of Section 17(a)(1) of the Securities Act

41. The Commission adopts by reference paragraphs 1 through 40 of this Complaint.

42. Since at least January 2019 to as late as 2021, Defendants, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, knowingly or recklessly employed devices, schemes, or artifices to defraud.

43. By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

### COUNT II
### Violations of Section 17(a)(2) of the Securities Act

44. The Commission adopts by reference paragraphs 1 through 40 of this Complaint.

45. Since at least January 2019 to as late as 2021, Defendants, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary in

order to make the statements made, in the light of the circumstances under which they were made, not misleading.

46. By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

## COUNT III
### Violations of Section 17(a)(3) of the Securities Act

47. The Commission adopts by reference paragraphs 1 through 40 of this Complaint.

48. Since at least January 2019 to as late as 2021, Defendants, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently engaged in transactions, practices, or courses of business which have operated, are now operating, or will operate as a fraud or deceit upon the purchasers of such securities.

49. By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## COUNT IV
### Violations of Section 10(b) and Rule 10b-5(a) of the Exchange Act

49. The Commission adopts by reference paragraphs 1 through 40 of this Complaint.

50. Since at least January 2019 to as late as 2021, Defendants, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly employed devices, schemes, or artifices to defraud in connection with the purchase or sale of securities.

51.     By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(a) [17 C.F.R. § 240.10b-5(a)].

## COUNT V
### Violations of Section 10(b) and Rule 10b-5(b)
### of the Exchange Act

52.     The Commission adopts by reference paragraphs 1 through 40 of this Complaint.

53.     Since at least January 2019 to as late as 2021, Defendants, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in connection with the purchase or sale of securities.

54.     By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)].

## COUNT VI
### Violations of Section 10(b) and Rule 10b-5(c)
### of the Exchange Act

55.     The Commission adopts by reference paragraphs 1 through 40 of this Complaint.

56.     Since at least January 2019 to as late as 2021, Defendants, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly engaged in acts, practices, and courses of business which have operated, are now operating or will operate as a fraud upon any person in connection with the purchase or sale of any security.

57. By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act [ 15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(c) [17 C.F.R. § 240.10b-5(c)].

## VI. RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that this Court find Defendants committed the violations alleged in this Complaint and:

### A. Permanent Injunction

Issue a Permanent Injunction enjoining Hao and Qidian from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

### B. Disgorgement and Prejudgment Interest

Issue an Order directing Hao and Qidian, jointly and severally, to disgorge all ill-gotten gains received within the applicable statute of limitations, including prejudgment interest, resulting from the acts and/or courses of conduct alleged in this Complaint.

### C. Civil Money Penalties

Issue an Order directing Hao and Qidian to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

### D. Officer and Director Bar

Issue an Order pursuant to Section 20(e) of the Securities Act [15 U.S.C. §77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. §78u(d)(2)], permanently barring Hao from

serving as an officer or director of any issuer having a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

### E.
### Further Relief

Grant such other and further relief as may be necessary and appropriate.

### F.
### Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

### VII.
### DEMAND FOR JURY TRIAL

The Commission hereby demands a trial by jury on any and all issues in this action so triable.

Dated: September 28, 2023                    Respectfully submitted,

By:   /s/ Alice Sum
      Alice Sum
      Senior Trial Counsel
      Fla. Bar No. 354510
      Direct Dial: (305) 416-6293
      Email: sumal@sec.gov

      Attorney for Plaintiff
      **Securities and Exchange Commission**
      801 Brickell Avenue, Suite 1950
      Miami, FL 33131
      Telephone: (305) 982-6300
      Facsimile: (305) 536-4154