**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 23-cv-23704-JEM**

SECURITIES AND EXCHANGE COMMISSION,

     **Plaintiff,**

**v.**

**BIN HAO and,**
**QIDIAN, LLC,**

     **Defendants.**

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S**
**MOTION FOR FINAL JUDGMENT AGAINST DEFENDANT BIN HAO**

Plaintiff Securities and Exchange Commission ("the Commission") respectfully moves the Court for entry of a Final Judgment against Defendant Bin Hao ("Hao") that: (1) imposes permanent injunctive relief, which the Court entered in its prior consented-to bifurcated judgment; and (2) orders Hao to pay disgorgement of $1,526,484, prejudgment interest thereon of $475,201.29, and a civil penalty of $236,451, for a total of $2,238,136.29. In support of this Motion, the SEC states:

**I.**     **Relevant Procedural History**

On September 28, 2023, the SEC filed its Complaint against Hao and Defendant Qidian LLC ("Qidian") (collectively, "Defendants") alleging violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder. The Complaint alleged that from at least January 2019 to September 2020 (the "Relevant Period"), Qidian and Hao fraudulently sold promissory notes and investment contracts (in the form of membership interests) promising returns between

8% and 25% to investors in various special purpose vehicles ("SPVs"), which provided loans to a Coral Gables real estate developer ("Bankrupt Entity"). During the Relevant Period, Defendants raised over $10.3 million after the Bankrupt Entity ceased making interest payments. Hao, who exercised sole control over Qidian's accounts, used $2.3 million of investor funds to pay prior investors' interest in a Ponzi-like fashion. Hao also misappropriated at least $793,267 to pay for his personal expenses and transferred $733,217 to three separate accounts in China that were not traced to any investor. *See* Complaint, DE 1.

Defendants consented to bifurcated settlements (DE 33-3 and 33-4) and, on March 6, 2025, the Court entered partial judgments against Defendants (DE 41 and 42) providing for full permanent injunctive relief as to all violations alleged in the Complaint and ordering disgorgement, prejudgment interest thereon, and a civil penalty in amounts to be determined by the Court upon the SEC's motion, and, as to Hao, an officer and director bar ("Judgment"). *See* Judgment, DE 41 at Sections I and III.

By this Motion, the Commission seeks entry of a final judgment against Hao imposing permanent injunctive relief as to all violations charged, an officer and director bar and ordering disgorgement, with prejudgment interest thereon, and a civil penalty in the amounts set forth herein. This Motion will resolve the Commission's remaining claims for monetary relief against Hao, and will conclude this litigation.[1]

II.     **The Facts Alleged in the Complaint Are Accepted As and Deemed True for Purposes of this Motion**

Pursuant to Hao's consent to Judgment (DE 33-3) (the "Consent"), Hao agreed that, for purposes of this motion, the allegations of the Complaint shall be accepted as and deemed true by

---

[1] The SEC is no longer seeking monetary relief against Qidian; that entity was administratively dissolved in April 2023, is defunct and has no assets.

the Court. *See* DE 33-3 at ¶ 3. Hao also is precluded from arguing that he did not violate the subject provisions of the federal securities laws. *Id*. It is appropriate for the Court to order monetary relief under such framework. *See e.g., SEC v. Mizrahi, et al.*, 2020 WL 6114913, at \*2 (C.D. Cal. Oct. 5, 2020) (in ordering monetary relief, the court recognized that "[u]nder the terms of the consent judgment, [defendant] is not allowed to contest the underlying facts alleged in the Complaint, and he has agreed for the purposes of this motion that the Court shall deem the allegations of the Complaint to be true."); *SEC v. Marshall*, 2020 WL 3047470, at \*1 n. 4 (D. Nev. June 8, 2020) (in ordering monetary relief, the court noted it had "drawn the background from the complaint allegations, which [it] accepted as true for purposes of this motion" based on defendant's consent to judgment). Thus, for purposes of this motion, the allegations of the Complaint are uncontested and shall be accepted as and deemed true by the Court.

### III.   The Factual Allegations in the Complaint

The following allegations, which are deemed admitted against Hao, are most relevant to determining the amount of disgorgement, prejudgment interest thereon, and a civil penalty to impose against him.

#### A.   The Securities Transactions

Qidian held itself out as a "High-Tech Real Estate Investment & Financing company," and Hao presented himself as a successful hedge fund trader and real estate project financier. *See* Complaint, DE 1, at ¶ 13.  Starting no later than January 2017, the Defendants offered investments in unit interests in SPVs combined with promissory notes to provide financing for Bankrupt Entity's real estate ventures in the Miami metropolitan area developing several apartment buildings and private homes. *Id.* at ¶ 14.  Hao, on behalf of Qidian, solicited investors with whom

he had prior relationships within the Chinese-American community of Northern Virginia and Maryland, or investors contacted Hao through word of mouth from other investors. *Id.* at ¶ 15.

Qidian and Hao provided investors offering materials, including a subscription agreement for unit interests in an SPV, that Qidian created for each real estate venture the SPV was to invest in, as well as a promissory note bearing a variable interest rate (depending on the project) that ranged as high as 25% per year and was issued by each SPV. *Id.* at ¶ 16. The materials and agreements identified the offerings and membership interests as investments in unregistered securities. *Id.* at ¶ 17. Hao represented that the investments were low risk and carried various guarantees. *Id.* at ¶ 18. Hao represented to investors that they "will own 100% of the project prior to successful exit" and that the investments carried various guarantees such as a "project completion guarantee" and further "principal guaranteed" and "return guaranteed." *Id.* Similarly, Qidian's website stated that its projects had completion guarantees with developers. *Id.* at ¶ 19.

In late January 2019, after Bankrupt Entity had mostly ceased paying Qidian interest on the loans it had received, Defendants continued soliciting investors to purchase notes in Bankrupt Entity and non-Bankrupt Entity real estate ventures (offering the same or similar structures and terms in promissory notes and units in SPV LLCs) in Miami, Washington, DC, and Maryland. *Id.* at ¶ 20. Multiple Qidian investors tied to Bankrupt Entity projects had their original investments rolled into these offerings. *Id.* at ¶ 21. Investors signed new investment agreements Hao provided and received new promises regarding interest to be paid. *Id.* Hao also continued to solicit and accept investments from new investors. *Id.* As new investor funds were deposited into Qidian's bank accounts, Defendants comingled these funds with other money, did not invest the proceeds in real estate, and proceeded to misappropriate these funds to pay prior investors and their own personal expenses. *Id.* at ¶ 22.

Numerous investors invested substantial amounts of money in the SPVs.  The profits of investors were directly linked to the efforts of Qidian and Hao.  *Id.* at ¶ 23.  Investors had no management power over the SPVs and relied on Defendants to invest their funds with no expectation that they would be required to participate in efforts to generate returns.  *Id.*  Investors in the notes were motivated by the expectations of profits generated and distributed by Qidian and Hao.  *Id.* at ¶ 24.  These investments were offered and sold to a broad segment of the public and involved common trading for speculation or investments.  *Id.*  Defendants sold their investments to more than 60 investors residing across at least 17 states and offered them to dozens more investors.  *Id.*  The SPVs issued the notes to raise money to be pooled and used for investments in real estate projects, and the notes were offered and sold to investors, who reasonably expected the notes to be securities.  *Id.*  Since at least January 2017, when Defendants started raising investor funds for the SPVs, Qidian provided at least $26 million in funding to Bankrupt Entity for its various Miami projects from investors until Bankrupt Entity filed for Chapter 11 bankruptcy in September 2020.  *Id.* at ¶ 25. As described below, Defendants raised approximately $10.3 million from investors *after* Hao learned that Bankrupt Entity had stopped making interest payments to Qidian and was in dire financial condition.

> **B.      Hao Made Material Misrepresentations to Investors, and Offered and Sold Securities in Unregistered Transactions**

Contrary to Hao's portrayal to investors of Bankrupt Entity as a successful and profitable real estate developer, by January 2019 Bankrupt Entity had mostly ceased making interest payments to Qidian and was in dire financial condition.  *Id.* at ¶ 26.  In furtherance of the fraud, Defendants continued to pitch new investors on Bankrupt Entity's real estate investments in order to pay the interest and principal owed to old investors.  *Id.* at ¶ 27.

Beginning in 2019, Defendants made misrepresentations to investors in oral solicitations, offering materials, and promissory notes regarding the safety of the investments and investment guarantees. *Id.* at ¶ 28.   For example, a Power Point presentation provided to investors contained misrepresentations that investors "own 100% of the project prior to successful exit" and that the investments carried a "project completion guarantee," as well as "principal guaranteed" and "return guaranteed." *Id.*  Defendants also represented to these investors that the projects were low risk. *Id.*  These statements were false. *Id.*  Not only were the investments not guaranteed, Qidian did not own any percentage of the real estate projects it invested in as shown by Bankrupt Entity's bankruptcy filings listing Qidian as an unsecured creditor. *Id.* at ¶ 29.

Defendants offered "guaranteed" interest rates as high as 25% on new investments. *Id.* at ¶ 30.  However, new investors never received their interest or principal payments.  While failing to disclose Bankrupt Entity's deteriorating financial condition from investors, Defendants continued to solicit investors and raised at least $10.3 million of investments from at least 67 investors in both Bankrupt Entity and new real estate offerings. *Id.* at ¶ 30.  In fact, Hao emailed Bankrupt Entity's CEO on June 3, 2019, advising that Hao was "crippled for awhile" and "us[ing] my own fund[s]" to pay interest to investors because Bankrupt Entity had ceased making payments.  Hao was fully aware of Bankrupt Entity's problems as he told the CEO: "I know you have financial difficulties." *Id.* at ¶¶ 32-33.  In letters sent to investors in 2021, Defendants conceded they knew in 2019 that Bankrupt Entity was not making interest payments to Qidian. *Id.* at ¶ 34.

### C.  Misuse and Misappropriation of Investor Funds

Defendants represented to investors that their funds would be used to invest in and complete the various real estate projects in Miami, Washington, DC, and Maryland. *Id.* at ¶ 35.

6

Contrary to Defendants' representations, Hao misused and misappropriated more than $3.8 million of the $10.3 million Defendants raised from investors during the Relevant Period.  *Id.* at ¶ 36. Defendants failed to disclose that they would use investor funds to pay back previous investors or for Hao's personal expenses.  *Id.* at ¶ 37.  Defendants used $2.3 million raised from new investors to pay previous investors their principal due on older investments and/or as interest payments in a Ponzi-like fashion.  *Id.* at ¶ 38.

Hao also misappropriated more than $793,267 of investor funds to pay for his personal expenses, taking large cash withdrawals and making payments to Hao's personal credit cards, car lease, and residence. Hao also transferred $733,217 to three separate accounts in China, of which none of the individuals listed as account owners are known to be investors.  *Id.* at ¶¶ 39-40.

**IV.    The Court Should Impose Permanent Injunctive Relief Against Hao**

The proposed Final Judgment incorporates the permanent injunctive relief that Hao consented to [DE 33-3], and which was already entered by the Court [DE 41]. The proposed Final Judgment also incorporates the officer and director bar against Hao already entered by the Court, to which Hao also consented.

The proposed Final Judgment also complies with the requirements for entry of injunctive relief under Federal Rule of Civil Procedure 65(d), and Eleventh Circuit law under *SEC v. Goble*, 682 F.3d 934, 951-52 (11th Cir. 2012).Rule 65(d) provides that "[e]very order granting an injunction  . . . must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts sought to be restrained or required." *See* Fed. R. Civ. P. 65(d). Eleventh Circuit law likewise requires that judgments for injunctive relief describe in reasonable detail the acts or conduct sought to be restrained. *SEC v. Goble*, 682 F.3d 934, 951-52 (11th Cir. 2012). The *Goble* court, while

questioning whether merely reciting the language of a statute in an injunction adequately informs a defendant of the prohibited conduct, also explained that "a broad, but properly drafted injunction, which largely uses the statutory or regulatory language may satisfy the specificity requirement of Rule 65(d) so long as it clearly lets the defendant know what he is ordered to do or not do." *Id.* at 952.

Here, the proposed Final Judgment states the reason for issuance of a permanent injunction, *i.e.*, the Commission filed a Complaint against Hao and Hao consented to injunctive relief. In addition to using language from Section 10(b) and Rule 10b-5 of the Exchange Act and 17(a) of the Securities Act, it also specifies the terms of the injunction and sufficiently notifies Hao of the restrained conduct. Incorporated at the end of each subsection of the anti-fraud provisions alleged, the proposed Judgment includes the following descriptive language:

> by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication with any investor or prospective investor, about:
>
> > (A) any investment strategy or investment in securities,
> > (B) the prospects for success of any company,
> > (C) the use of investor funds,
> > (D) compensation to any person; or
> > (E) the misuse of investor funds or investment proceeds.

Thus, in addition to tracking the requisite statutory language, the injunctive language includes specific prohibitions which are directly tied to the allegations in the Complaint and properly put Hao on notice of the conduct which is prohibited. This satisfies the test for assessing permanent injunctive relief, *see Starbucks v. McKinney*, 144 S. Ct. 1570, 1576 (2024) (noting that "[w]hen Congress empowers courts to grant equitable relief, there is a strong presumption that courts will exercise that authority in a manner consistent with traditional principles of equity,"

which, with regard to injunctive relief, includes using "the traditional four-part test" set forth in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)).[2]

Accordingly, the Court should permanently enjoin Hao from violating the subject federal securities laws. *See SEC v. Ruiz*, 0:22-cv-61609-WPD (S.D. Fla. Nov. 19, 2024) (DE 28) (final judgment with similar injunctive language as to Securities Act Section 17(a) and Exchange Act Section 10(b) and Rule 10b-5 thereunder); *SEC v. Gonzalez*, No. 0:22-cv-61824-WPD (S.D. Fla. Feb. 5, 2024) (same); *SEC v. McLellan*, 2024 WL 3030421, *8 (D. Mass. June 17, 2024) (imposing permanent injunction where "the provisions enjoined may be broad, but they are not complicated: [defendant] may not engage in fraud in the offering or sale of securities.").

## V.   **Monetary Relief**

### A.   **The Court Should Order Disgorgement Against Hao**

Under Sections 21(d)(5) and 21(d)(7) of the Exchange Act, federal district courts have the authority to order disgorgement in enforcement actions.  15 U.S.C. §§ 78u(d)(5) & 78 u(d)(7); *see also Liu v. SEC*, 140 S. Ct. 1936 (2020).  The "primary purpose of disgorgement orders is to deter violations of the securities laws by depriving violators of their ill-gotten gains." *Kokesh v. SEC,* 137 S. Ct. 1635, 1643 (2017). The Court has the authority to order disgorgement "that does not exceed a wrongdoer's net profits and is awarded for victims." *Liu*, 140 S. Ct. at 1940. The Commission is entitled to disgorgement "upon producing a reasonable approximation of a defendant's ill-gotten gains." *SEC v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004). "Exactitude is not a requirement.'" *SEC v. ETS Payphones, Inc.,* 408 F.3d 727, 735 (11th Cir. 2005).  Further, a defendant's financial situation, or any financial hardship that disgorgement would impose, are not

---

[2] *See Winter*, 555 U.S. at 32 (a party seeking a permanent injunction must demonstrate (1) actual success on the merits, (2) irreparable harm will likely result in the absence of the injunction, (3) the balance of the equities tips in favor of the party seeking the injunction, and (4) the injunction is in the public interest).

factors to be considered in determining disgorgement. *SEC v. Warren*, 534 F.3d 1368, 1370 (11th Cir. 2008).

The Court should order Hao to pay disgorgement of $1,526,484, representing the ill-gotten proceeds of his violations of the federal securities laws. This amount is consistent with the Commission's bank analysis regarding the use of investor funds during the Relevant Period. As set forth in the accompanying Declaration of Samuel Crowell (the "Crowell Declaration"), attached hereto as **Exhibit 1**, Hao was the sole signatory to bank accounts held in the name of Qidian and affiliated entities, in which Hao commingled investor funds. Crowell Declaration, at ¶¶ 4, 5. The chart below summarizes the total investor funds Hao transferred from Qidian's bank account and, therefore, are subject to disgorgement:

| Description | Amount |
|---|---|
| Cash withdrawals or transfers to Hao's personal bank account | $519,765 |
| Payments on Hao's Chase Bank, American Express, and Citibank credit cards | $234,627 |
| Payments to BMW Financial, lease payments for Hao's personal car | $22,986 |
| Mortgage payments for Hao's personal residence | $15,887 |
| Transfers to three separate accounts in China, of which none are known to be investors | $733,217 |
| **Disgorgement Total** | $1,526,484 |

*See* Crowell Declaration, at ¶¶ 8, 9.

Hao has not requested or provided evidence of deductions available under *Liu*. *See Liu*, 140 S. Ct. at 1950 ("a defendant is entitled to a deduction for all marginal costs incurred in producing the revenues that are subject to disgorgement") citing Restatement (Third) of Restitution and Unjust Enrichment, § 51, Comment h, at 216. At least two circuit courts have held that the defendant bears the burden to provide evidence of legitimate expenses. *United States Commodity*

10

*Futures Trading Comm'n v. Tayeh*, 848 F.Appx. 827, 830 (11th Cir. 2021) (per curiam); *SEC v. Fowler*, 6 F.4th 255, 267 (2d Cir. 2021).

### B.        The Court Should Order Prejudgment Interest Against Hao

The Court has discretion to impose prejudgment interest. *SEC v. Carillo*, 325 F.3d 1268, 1273 (11th Cir. 2003). Requiring payment of interest prevents a defendant from obtaining the benefit of what amounts to an interest free loan procured from illegal activity. *SEC v. Moran,* 944 F. Supp. 286, 295 (S.D.N.Y. 1996). The Commission seeks prejudgment interest in the amount of $475,201.29, which is calculated from January 31, 2019 (the date from which Hao received ill-gotten gains) through July 31, 2025 (the month preceding the filing of this motion) and, per Hao's Consent [DE 33-3 at ¶ 3], is based on the tax underpayment rate set forth in 26 U.S.C. § 6621(a)(2). *See SEC v. Huff*, 758 F.Supp.2d 1288, 1363 (S.D. Fla. 2010) (applying the IRS underpayment rate because it reflects what "it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from his fraud); *SEC v. Commonwealth Equity Services, LLC*, 2024 WL 1375970, *12 (D. Mass. Mar. 29, 2024) (assessing prejudgment interest to "prevent defendants from receiving the benefit of what would otherwise be an interest-free loan" and holding that "the appropriate basis for calculation is the IRS underpayment rate."); *see also* Hao Prejudgment Interest Report, attached hereto as **Exhibit "2"**. The Court should therefore order Hao to pay $475,201 in prejudgment interest.

### D.        <u>The Court Should Order a Civil Penalty Against Hao</u>

A substantial penalty is necessary and appropriate to financially punish Hao for his unlawful activities and to deter others from engaging in violations of the federal securities laws. *See SEC v. Lyndon*, 39 F.Supp.3d 1113, 1123 (D. Haw. 2014) (the purpose of a civil penalty is both punishment and deterrence). The deterrence of securities law violations through the

imposition of monetary sanctions advances important goals, such as "encouraging investor confidence, increasing the efficiency of financial markets, and promoting the stability of the securities industry." *See SEC v. Palmisano*, 135 F.3d 860, 866 (2d Cir. 1998).

Section 20(d) of the Securities Act, 15 U.S.C. §77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. §78u(d)(3), authorize civil penalties under a three-tiered structure for federal securities violations. Under the third tier, which applies here because Hao's conduct involved fraud and substantial investor losses, the Court may impose a civil penalty, in light of the facts and circumstances, that does not exceed the greater of i) $236,451[3] for each violation (occurring after November 3, 2015) or (ii) the gross amount of pecuniary gain to Hao as a result of his violations. 15 U.S.C. §77t(d)(2)(B), 15 U.S.C. §78u(d)(3)(B)(iii). Courts have determined that a violation occurs each time a defendant has acted to violate the securities laws. *See Huff*, 758 F. Supp. 2d at 1366 (calculating civil penalty by the number of defendant's false financial filings); *SEC v. Lazare Indus., Inc.*, 294 Fed.Appx.711, 715 (3d Cir. 2008) (for the purposes of assessing reasonableness of court's assessment of penalty, court can consider each sale of unregistered stock as a separate violation).

In determining the amount of the civil penalty to assess against a defendant, courts consider the following factors: (1) the egregiousness of the violations at issue, (2) the defendant's scienter, (3) the repeated nature of the violations, (4) the defendant's failure to admit to their wrongdoing; (5) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (6) the defendant's lack of cooperation and honesty with authorities, if any; and (7)

---

[3] The Complaint alleges that Hao's misconduct occurred from at least January 2019 through September 2020. *See* Complaint, DE 1 at ¶1. The statutory penalty amount is $236,451 for fraud violations involving substantial investor losses occurring from November 3, 2015 onward. *See* https://www.sec.gov/enforce/civil-penalties-inflation-adjustments (last visited August 22, 2025, 2025) and also attached as **Exhibit 3**.

whether the penalty that would otherwise be appropriate should be reduced due to the defendant's demonstrated current and future financial condition. *Huff*, 758 F. Supp. 2d at 1364.

As to the first three factors, Hao's conduct was egregious, recurrent, and made with the highest level of scienter. For years, Hao promised "guaranteed" returns of as high as 25%, while being aware of the Bankrupt Entity's financial decline and its inability to make interest payments on prior loans. Despite his assurances to investors that their funds would be used to invest in SPVs related to real estate development, Hao used $2.3 million to make Ponzi-like payments to prior investors, and misappropriated or diverted over $1.5 million. Hao also preyed on individuals that trusted him and with whom he had a prior relationship within the Chinese-American community of which he was a member.

Regarding the fourth factor, Hao has not accepted responsibility for his misconduct. The fifth factor is satisfied because Hao's conduct also resulted in substantial losses to investors. Hao has also not cooperated with the SEC. Hao has not produced any documents or information concerning the $733,217 he sent to individuals in China. Finally, Hao has not produced any information or documents about his financial condition that might weigh in favor of reducing penalties.

The $236,451 civil penalty is also in line with penalty amounts imposed against defendants charged with similar violations. *See SEC v. Scalise, et al.,* No. 25-cv-3088 (E.D. Pa., final judgment entered June 23, 2025) (civil penalty of $236,451 assessed against principal of company through which he operated a $3.6 million offering fraud); *SEC v. Spargo, et al.*, No. CV-25-01043 (D. Ariz., final judgment entered April 4, 2025) ($230,464 civil penalty assessed against director of company who raised $1.65 million from investors in offering fraud); *SEC v. Smith, et al.*, No. 24-cv-24802 (S.D. Fla., final judgment entered April 14, 2025) ($236,451 civil penalty assessed

13

against company CEO who engaged in fraudulent scheme to acquire and illegally sell large quantities of company stock).

## VI.      Conclusion

For the reasons stated above, the Commission respectfully requests that the Court grant this motion and enter the proposed Final Judgment submitted herewith.

### Certificate of Conferral

Pursuant to the Southern District of Florida Local Rule 7.1(a)(3), counsel for the Commission conferred with counsel for Hao, who opposes the relief requested in this motion.

Dated: September 2, 2025                           Respectfully submitted,


By:     /s/ Alice Sum_____
        Alice Sum
        Senior Trial Counsel
        Fla. Bar No. 354510
        Direct Dial: (305) 416-6293
        Email: sumal@sec.gov

        Attorney for Plaintiff
        **Securities and Exchange Commission**
        801 Brickell Avenue, Suite 1950
        Miami, FL 33131
        Telephone: (305) 982-6300
        Facsimile: (305) 536-4154